CLERK US DISTRICT COURT
NORTHERN DIST. OF TX

ORIGINAL **IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS,
DALLAS DIVISION**

2009 DEC 16  AM 10: 49

DEPUTY CLERK _____

| | |
|---|---|
| **LIBERTY MEDIA HOLDINGS, L.L.C.** | * |
| A California Limited Liability Co., | * |
| | * |
| **Plaintiff,** | * |
| | * |
| **VERSUS** | * |
| | * |
| **HOTFILE.COM,** | * |
| A Foreign (Panama) Corporation, | * |
| **ANTON TITOV,** | * |
| A Foreign Individual, | * |
| **WEBAZILLA, L.L.C.,** | * |
| A Florida Limited Liability Company, | * |
| **WEBAZILLA, B.V.,** | * |
| A Foreign (Dutch) Corporation, | * |
| **MONIKER ONLINE SERIVCES,** | * |
| A Florida Limited Liability Company | * |
| **LIMELIGHT NETWORKS,** | * |
| An Arizona Corporation | * |
| **JOHN DOE, numbers 1-500,** | * |
| Presently unknown Defendants. | * |
| | * |
| **Defendants.** | * |
| | * |

**TRIAL COURT CAUSE #:**

3-09CV2396-D

☐ ORIGINAL

## DOCUMENT FILED UNDER SEAL

***PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER, ORDER FOR SEIZURE BY AUDIT, ORDER FOR EXPEDITED DISCOVERY, & ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION***

**LEAD COUNSEL:**
Marc J. Randazza, Esq.
302 Washington Street, Suite 321
San Diego, CA 92103
Telephone:619-866-5975
Facsimile: 619-866-5976
Electronic Mail: marc@corbinfisher.com
Massachusetts Bar Card No.: 651477
Florida Bar Card No.: 625566
Admitted to practice before the
United States District Court, Northern District

**LOCAL COUNSEL:**
Gary P. Krupkin, Esq.
1116 Commerce Drive
Richardson, Texas 75081
Telephone: 972-261-8284
Facsimile: 972-671-3671
Electronic Mail: krupkinlaw@gmail.com
Texas Bar Card No.: 00790010
Admitted to practice before the
United States District Court
Northern District of Texas


### *TABLE OF CONTENTS*

| SECTION | DESCRIPTION | PAGE |
|---|---|---|
| | Cover Sheet…………………………………………….. | 1 |
| | Table of Contents……………………………………… | 2 |
| | Table of Authorities…………………………………… | 3 |
| | Preamble…………………………………………….... | 8 |
| I. | Introduction…………………………………………... | 9 |
| II. | Statement of Facts…………………………………….. | 9 |
| III. | The Court Should Grant Plaintiff an *ex parte* Temporary Restraining Order…………………………………….. | 17 |
| | III-A.  Plaintiff Has a Substantial Likelihood of Prevailing On The Merits of Its Copyright Claims……………….. | 18 |
| | III-B.  Plaintiff Has a Substantial Likelihood of Prevailing On the Merits of Its Trademark Claim……………….. | 19 |
| | III-C.  Plaintiff Suffers Irreparable Harm……..…………… | 19 |
| | III-D.  The Balance of Equities Favors the Issuance of the Requested Injunctive Relief…………………………. | 21 |
| | III-E.  The Requested Relief is in the Public Interest………. | 22 |
| | III-F.  *Ex parte* Relief is Essential in this Action…………… | 23 |
| IV. | The Court Should Grant Plaintiff an *ex parte* Order for Expedited Discovery……………………………….... | 28 |
| V. | Plaintiff Will Provide Adequate Security………………………. | 28 |
| V. | The Court Should Order Defendant To Show Cause Regarding Issuance of a Preliminary Injunction……………….. | 29 |
| VII. | Conclusion…………………………………………….. | 29 |
| | Subscription of Attorneys…………………………............ | 29 |

MEMORANDUM IN SUPPORT OF EX PARTE APPLICATION FOR TRO, ORDER FOR SEIZURE
EXPEDITED DISCOVERY, AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION



## **TABLE OF AUTHORITIES**

<u>**Page No.**</u>

<u>**CASES**</u>

*A&M Records, Inc., et al. v. Napster, Inc., et al.*
284 F.3d 1091 (9th Cir., 2002)...............................................  9

*A&M Records, Inc., et al. v. Napster, Inc., et al.,*
239 F.3d 1004 (9th Cir., 2001)...............................................  9

*Albert E. Price, Inc. v. Metzner, et al.,* 574 F. Supp. 281 (E.D.Pa., 1983).....  20

*American Can Company v. Mansukhani,* 742 F.2d 314 (7th Cir., 1984)......  24

*Apple Computer, Inc. v. Formula International, Inc.,*
725 F.2d 521 (9th Cir., 1984)...............................................  19

*Apple Computer, Inc. v. Franklin Computer Corporation,*
714 F.2d 1240 (3d Cir., 1983), *cert. dism., Franklin Computer Corporation*
*v. Apple Computer, Inc.* 464 U.S. 1033, 104 S.Ct. 690,
79 L.Ed2d 158 (1984)...............................................  21, 22

*Augusta National, Inc. v. Executive Golf Management, Inc.,*
996 F. Supp. 492 (D.S.C., 1998)...............................................  20

*Autoskill, Inc. v. National Educational Support Systems, Inc.,*
994 F.2d 1476 (10th Cir.), *cert. denied,* 510 U.S. 916,
114 S.Ct. 307, 126 L.Ed.2d 254 (1993)...............................................  22, 23

*Bank of Texas v. Commerce Southwest, Inc.,*
741 F.2d 785 (5th Cir., 1984)...............................................  19

*Brookfield Communications, Inc., v. West Coast Entertainment*
*Corporation,* 174 F.3d 1036 (9th Cir., 1999)...............................................  21

*Calvin Klein Cosmetic Corporation v. Welcome Industrial Corporation,*
U.S.P.Q.2d (BNA) 1151 (E.D.N.Y., 1991)...............................................  20

*Century Home Entertainment, Inc. v. Laser Beat, Inc.,*
859 F. Supp. 636 (E.D.N.Y., 1994)...............................................  25

MEMORANDUM IN SUPPORT OF EX PARTE APPLICATION FOR TRO, ORDER FOR SEIZURE
EXPEDITED DISCOVERY, AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION

***Chanel, Inc. v. Italian Activewear of Florida, Inc.,***
931 F.2d 1472 (11th Cir., 1991)……………………………………………   17

***Cisco Systems, Inc. v. Huawei Technologies Company, Ltd.,***
266 F. Supp.2d 551 (E.D.Tex., 2003)…………………………………   23

***Country Kids 'N City Slicks, Inc. v. Sheen,*** 77 F.3d 1280
(10th Cir., 1996)……………………………………………………   20

***Educational Testing Services v. Katzman,*** 793 F.2d 533 (3d Cir., 1986)……   18, 20, 21

***F.W. Woolworth, Co. v. Contemporary Arts, Inc.,*** 344 U.S. 228,
73 S.Ct. 222, 97 L.Ed.2d 276 (1952)………………………………   17

***Fimab-Finanziaria Maglificio Biellese Fratelli Fila S.p.A.***
***v. Kitchen,*** 548 F. Supp. 248 (S.D.Fla., 1982)………………………   26

***First Technology Safety Systems, Inc. v. Depinet,*** 11 F.3d 641
(6th Cir., 1993), *rehearing denied, en banc,* ***Vector Research v.***
***Howard & Howard Attorneys, P.C.,*** 1996 U.S. App.
LEXIS 7492 (6th Cir., 1996)………………………………………   26

***Granny Goose Foods, Inc., et al. v. Brotherhood of Teamsters,***
415 U.S. 423, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974)……...……………   23

***In The Matter Of: Vuitton Et Fils S.A.,*** 606 F. 2d 1 (2d Cir., 1979)…………   24, 25, 26

***Lakedreams v. Taylor,*** 932 F.2d 1103 (5th Cir., 1991)……………………   18, 20, 25

***Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia Inc.,***
43 F.3d 922 (4th Cir., 1995)………………………………………….   20

***Mead Johnson & Co. v. Baby's Formula Service, Inc.,***
402 F.2d 19 (5th Cir., 1968)……………………………………………   17

***Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,***
545 U.S. 913, 125 S.Ct. 2764, 162 L.Ed.2d 781 (2005)…………………...   9

***Microsoft Corporation. v. CMOS Technologies, Inc.,***
872 F. Supp. 1329 (D.N.J., 1994)……………………………………   19

***Microsoft Corporation v. Software Wholesale Club, Inc.,***
129 F.Supp.2d 995 (S.D.Tex., 2000)…………………………………   19

MEMORANDUM IN SUPPORT OF EX PARTE APPLICATION FOR TRO, ORDER FOR SEIZURE
EXPEDITED DISCOVERY, AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION

*Miller v. Universal City Studios, Inc.*, 650 F.2d 1365 (5th Cir., 1981)……...   17

*NBA Properties v. Various John Does*, 113 F.3d 1246 (10th Cir., 1997),
*dec'n. without published opinion, reported in full at* 1997 U.S.App.
LEXIS 11946 (10th Cir., Utah, 1997)……………………………………...   24

*Perfect 10, Inc. v. Cybernet Venutres, Inc.*, 213 F.Supp.2d 1146
(C.D.Cal., 2002)……………………………………………………………   22

*Plains Cotton Cooperative Association of Lubbock, Texas v.*
*Goodpasture Computer Service, Inc.*, 807 F.2d 1256 (5th Cir., 1987),
*rehearing denied, en banc*, 813 F.2d 407 (5th Cir., 1987), *cert. denied*,
484 U.S. 821, 108 S.Ct. 80, 98 L.Ed.2d 42 (1987)…………………………   17, 18

*Playboy Enterprises, Inc. v. Webbworld, Inc.*, 991 F. Supp. 543
(N.D.Tex., 1997), *affirmed without opinion*, 168 F.3d 486 (5th Cir., 1999)....   17

*Porsche Cars North America, Inc. v. Manny's Porshop, Inc.*,
972 F. Supp. 1128 (N.D.Ill., 1997)…………………………………………   20, 21

*Reebok International, Ltd. v. Marnatech Enterprises, Inc.*,
970 F.2d 552 (9th Cir., 1992)……………………………………………   26

*Security Center, Ltd. v. First National Security Centers*,
750 F.2d 1295 (5th Cir., 1985)…………………………………………...   19

*Sega Enterprises, Ltd. v. Accolade, Inc.*, 977 F.2d 1510
(9th Cir., 1992)……………………………………………………………   28

*Sid & Marty Krofft Television Productions, Inc. v.*
*McDonalds Corporation*, 562 F.2d 1157 (9th Cir., 1997)………………   18

*Speaks v. Kruse*, 445 F.3d 396 (5th Cir., 2006)…………………………   29

*Talking Rain Beverage Company, Inc. v.*
*South Beach Beverage Company*, 349 F.3d 601 (9th Cir., 2003)…………   19

*Trak, Inc. v. Benner Ski KG*, 475 F. Supp. 1076 (D.Mass., 1979)………...   20

*The Walt Disney Company, v. Jim Garofalo*, 9:02-CV-5314
(E.D.N.Y., Nov. 12, 1992)…………………………………………………   26

*Universal City Studios, Inc. v. Ronnie Lorizzo*, 9:03-CV-5182(SJ)
(E.D.N.Y., Nov. 17, 1993)…………………………………………………   25, 26

MEMORANDUM IN SUPPORT OF EX PARTE APPLICATION FOR TRO, ORDER FOR SEIZURE
EXPEDITED DISCOVERY, AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION

*Vuitton v. White*, 945 F.2d 569 (3d Cir., 1991)………………………………….. 24, 26

*Wainwright Securities, Inc. v. Wall Street Transcript Corporation*,
558 F.2d 91 (2d Cir., 1977), *cert. denied*, 434 U.S. 1014, 98 S.Ct. 730,
54 L.Ed2d 759 (1978)……………………………………………………………... 19

*Whelan Associates, Inc. v. Jaslow Dental Laboratory, Inc.*, 797 F.2d 1222,
(3d Cir., 1986), *cert. denied*, 479 U.S. 1031, 107 S.Ct. 877,
93 L.Ed.2d 831 (1987)…………………………………………………………… 18

*Wilden Pump & Engineering Company v. Pressed & Welded
Products Company*, 655 F.2d 984 (9th Cir., 1981)……………………………… 17

**FEDERAL STAUTUTES**

**15 U.S.C. §1051**………………………………………………………………… 19

**15 U.S.C. §1116(d)(1)(A)**……………………………………………………… 9

**15 U.S.C. §§1116-18**…………………………………………………………… 25

**17 U.S.C. §410(c)**……………………………………………………………… 18

**17 U.S.C. §502**………………………………………………………………..... 9, 20, 25

**17 U.S.C. §506(a)**……………………………………………………………… 25

**17 U.S.C. §512(c)(2)**…………………………………………………………… 13

**17 U.S.C. §503**………………………………………………………………… 9, 25

**18 U.S.C. §§2319, 2320, 1341, 1343, 1956**…………………………………… 25

**FEDERAL RULES**

**Fed. R. Civ. Proc., rule 30(a),(b)(3)** (West, 2009)…………………………… 28

**Fed. R. Civ. Proc., rule 33(a)** (West, 2009)…………………………………… 28

**Fed. R. Civ. Proc., 34(b)** (West, 2009)………………………………………… 28

**Fed. R. Civ. Proc., rule 65** (West, 2009)…………………………………....... 9, 23, 29

**Fed. R. Civ. Proc., rule 65(b)** (West, 2009)…………………………………… 23

MEMORANDUM IN SUPPORT OF EX PARTE APPLICATION FOR TRO, ORDER FOR SEIZURE
EXPEDITED DISCOVERY, AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION

## LEARNED TREATISES

**3 M. Nimmer & D. Nimmer, Nimmer On Copyright, §14.06[A]** (1998)……… 20, 23

**4A Moore's Federal Practice, §30.54[2]** (1994)…………………….... 28

## AUTHORITATIVE WEBSITES

http://www.copyright.gov/onlinesp/list/h_agents.html ………………………….. 13

http://www.copyright.gov/onlinesp/list/w_agents.html ………………………….. 13


# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

LIBERTY MEDIA HOLDINGS, L.L.C.     *
      A California Limited Liability Co.,     *
      *

      **Plaintiff,**     *
      *

**VERSUS**     *
      *

HOTFILE.COM,     *
      A Foreign (Panama) Corporation,     *     **TRIAL COURT CAUSE #:**
ANTON TITOV,     *
      A Foreign Individual,     *
WEBAZILLA, L.L.C.,     *     _____
      A Florida Limited Liability Company,     *
WEBAZILLA, B.V.,     *
      A Foreign (Dutch) Corporation,     *
MONIKER ONLINE SERVICES,     *
      A Florida Limited Liability Company     *
LIMELIGHT NETWORKS,     *
      An Arizona Corporation     *
JOHN DOE, numbers 1-500,     *
      Presently unknown Defendants.     *
      *

**Defendants.**     *
      *

---

## DOCUMENT FILED UNDER SEAL

### *PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER, ORDER FOR SEIZURE BY AUDIT, ORDER FOR EXPEDITED DISCOVERY, & ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION*

**TO THE HONORABLE JUDGE OF SAID COURT:**

      **COMES NOW, LIBERTY MEDIA HOLDINGS, L.L.C.** (hereinafter, Plaintiff "LMH") by

and through its undersigned Counsel, **MARC RANDAZZA, ESQ.**, an attorney licensed to practice

-8-

MEMORANDUM IN SUPPORT OF EX PARTE APPLICATION FOR TRO, ORDER FOR SEIZURE
EXPEDITED DISCOVERY, AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION



law in the States of Massachusetts and Florida and admitted to practice before the United States District Court, Northern District of Texas, and **GARY P. KRUPKIN, ESQ.**, an attorney licensed to practice law in the State of Texas and before the United States District Court, Northern District of Texas, and file this, its ***Ex parte Application For Temporary Restraining Order, Order for Seizure by Audit, Order for Expedited Discovery, and Order to Show Cause Re: Preliminary Injunction,*** in the above-entitled and -numbered cause of action.  The Plaintiff respectfully requests the relief requested herein.  For just cause, the Plaintiff would show the Court as follows:

### *SECTION NUMBER I:  INTRODUCTION*

**1.1**     Pursuant to **17 U.S.C. §§502, 503, 15 U.S.C. §1116(d)(1)(A)** (West, 2009) and **FED. R. CIV. PROC., rule 65**, Plaintiff moves this Honorable Court *ex parte* for a temporary restraining order and order for seizure.

### *SECTION NUMBER II: STATEMENT OF FACTS*

**2.1**     Beginning in the 1990's, the Internet became a flea market of copyrighted intellectual property, pirated from legitimate producers and owners of the property.  *Ab initio*, this was primarily the realm of individuals pirating music files on centralized servers such as Napster.  *See, e.g., **A&M Records, Inc., et al. v. Napster, Inc., et al.**, 284 F.3d 1091 (9th Cir., 2002), see, also, **A&M Records, Inc., et al. v. Napster, Inc., et al.**, 239 F.3d 1004 (9th Cir., 2001).  The Courts held Napster responsible for being a clearinghouse for pirated music.  At that point, intellectual property thieves adapted a decentralized model; none of the stolen files resided on a central computer.  The pirated files resided on the individual end user's computer.  The decentralized model helped those interested in pirating copyrighted works by using computers communicating with one another.  This permitted the owner's of piracy systems to claim smugly that they were only "facilitating communication" between the parties.

**2.2** The Supreme Court ruled this business model illegal, also. *See, **Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,*** 545 U.S. 913, 125 S.Ct. 2764, 162 L.Ed.2d 781 (2005). In ***Grokster,*** the Supreme Court held that its users could sue the defendant, a peer-to-peer network operator, for inducing copyright infringement.

**2.3** The present ill, fostered by the Defendants and others similarly situated, is their adaptability to new methods by which to purloin intellectual property. The latest adaptation is a reaction to both the legal regime after ***Grokster*** and the technological reality that permits the wholesale theft and on-line distribution of entire motion picture films. The effort requires enormous amounts of bandwidth and data/electronic storage capacity. Defendant Hotfile.com, a self-described "one-click" hosting" site, has the technological capacity to accomplish this nefarious end. Further, Defendant Hotfile, in conjunction with the other named-Defendants, is active in the theft and distribution of copyrighted intellectual property, including, but not limited to, motion pictures.

**2.4** Under the "one-click" hosting business model, a company provides access to massive amounts of data storage, the primary purpose of which is the use and exchange of pirated copyrighted works. Much like Napster, the offending company stores the stolen works on its computers and servers. Unlike Napster, one-click hosting services are careful not to index the files, or acknowledge the almost-universal illegal use of its system.

**2.5** Defendant Hotfile.com's own website states:

HOTFILE.COM – Free one-click hosting!
With us you can **share big files** easily and securely:
Just choose a file, click the "Upload" button and send the download link to your friends and anyone you know.

*See*, www.Hotfile.com.

**2.6**    Defendant Hotfile.com, like Grokster before it, has a ***theoretical*** legitimate use.  Certainly, there are large files that individuals might want to share with other users with no illegal intent or untoward activity.    However, Defendant Hotfile.com's practical and overwhelmingly popular application is singular and transparent; *i.e.* to gain enormous profit from the illegal sharing of copyrighted materials.

**2.7**    Defendant Hotfile.com provides its users with the ability to upload and download materials anonymously.  Defendant Hotfile.com cleverly avoids cataloging or indexing the files to be willfully blind to their users uploads and downloads, all the while smiling like the Cheshire cat as ill-gotten gains fill their coffers.  To bolster the fact that Defendant Hotfile.com is aware of the illegality of its conduct, it offers two methods for download services.  Defendant Hotfile.com's partners in crime may download very slowly a stolen movie for no charge, or pay a premium to download the movie ten-times faster. *See,* **Exhibit A**, attached hereto and incorporated herein for all purposes.

**2.8**    The **Exhibit A** films, featured on Defendant Hotfile.com as either a "free" or "paid" download, are merely a representative sampling of over 800 infringements on Plaintiff LMH's works.  *See,* **Exhibit B** at ¶4, attached hereto and incorporated herein for all purposes, and further described as *Declaration of Miguel Sanchez* (hereinafter, "Sanchez Declaration.")  Plaintiff LMH also includes the copyright registration certificates for these particular works. *See,* **Exhibit C**, attached hereto and incorporated herein for all purposes.

**2.9**    If an individual shared one or two legitimate files, the delay caused by using the "free" download service would not justify the time necessary to enter a credit card to receive the "paid" download service.  If an individual depends on Defendant Hotfile.com as a source of stolen intellectual property, including movies and music, the membership fee is a bargain.  For $3.00 per day or $55.00 per year, a user can download an unlimited amount of movies and music.  Neither Defendant

Hotfile.com nor the individual downloading the pirated material pays anything to the actual copyright owner. *See*, **Exhibit D**, attached hereto and incorporated herein for all purposes.

**2.10** Defendant Hotfile.com's library of illicitly obtained materials does not appear magically or accidentally. Defendant Hotfile.com depends on an army of assistants to upload the content. The newest and most sought-after content attracts new users. A percentage of users, both old and new, sign-up for the premium "paid" download service. These users make Defendant Hotfile.com a hugely profitable enterprise.

**2.11** Defendant Hotfile.com's terms its assistants, "Affiliates." The basis of each Affiliate's compensation is the amount of content he or she uploads, how often users download that content, and the number of new Affiliates he or she brings to Defendant Hotfile.com. *See*, **Exhibit E**, attached hereto and incorporated herein for all purposes. Defendant Hotfile.com's business model rests on a massive pyramid or Ponzi scheme; veteran copyright infringers recruit new copyright infringers, while all infringers attract recruits to download the pirated intellectual property from which they receive a payment. Defendant Hotfile.com shares a small portion of its ill-gotten gains with their Affiliates, but receives significant income through the massive theft on which its business model rests.

**2.12** Defendant Hotfile.com's money churn works in this manner: a user uploading a file to Defendant Hotfile.com receives a "referral fee" if a separate user signs-up for Defendant Hotfile.com's premium download service as a result of seeing the newly-uploaded file. Defendant Hotfile.com profits from members paying for the "premium membership package." Newly uploaded content, virtually all of which Defendant Hotfile.com illegally and improperly obtains, serves as an advertisement and inducement to sign-up for the premium download service. Stolen copyrighted material is the source of Defendant Hotfile.com's revenue.

**2.13**    Plaintiff LMH discovered more than 800 copies of its copyrighted material illegally shared on Defendant Hotfile's website. *See,* **Exhibit B,** *Sanchez Declaration* at ¶4.  Plaintiff LMH conducted an investigation.  The investigation revealed:

    a.   Defendant Webazilla web-hosted Defendant Hotfile.com.  *See,* **Exhibit F,** attached hereto and incorporated herein for all purposes;

    b.   Defendant Hotfile.com did not have a registered DMCA Agent, required by **17 U.S.C. §512(c)(2),** to qualify for the DMCA safe harbor provisions.  *See,* http://www.copyright.gov/onlinesp/list/h_agents.html

    c.   Defendant Webazilla did not have a registered DMCA Agent, required by **17 U.S.C. §512(c)(2),** to qualify for the DMCA safe harbor provisions.  *See,* http://www.copyright.gov/onlinesp/list/w_agents.html

**2.14**    As the web-host for Defendant Hotfile.com and a company that does not comply with the DMCA, Defendant Webazilla is liable for copyright infringements that occur on its web-hosting system.

**2.15**    Plaintiff LMH provided both Defendant Hotfile.com and Defendant Webazilla with "takedown notices" in the DMCA prescribed form. *See,* **Exhibit G,** attached hereto and incorporated herein for all purposes.

**2.16**    After Plaintiff LMH noticed Defendant Webazilla, Plaintiff requested assistance to identify the person or persons operating Defendant Hotfile.com.  Defendant Webazilla failed and refused to assist and was intransigent against offering Plaintiff LMH any information.

**2.17**    In response to Defendant Webazilla's refusal to assist, Plaintiff LMH issued a subpoena.  The subpoena requested Defendant Webazilla identify Defendant Hotfile's 807 co-infringers and Defendant Hotfile.com's operators.  After receiving Plaintiff LMH's subpoena, a Defendant Webazilla



principal called Plaintiff LMH's attorney. The principal asked Plaintiff LMH's its reason for making the inquiry; the principal's concern was Defendant Hotfile.com's position as a "very big" and "important" customer. *See,* **Exhibit H**, Declaration of Marc J. Randazza in Support of Original Petition (hereinafter, *Randazza Petition.*"), attached hereto and incorporated herein for all purposes.

**2.18**   The principal's statement raised Plaintiff LMH's suspicion regarding the extent of Defendant Webazilla's involvement in copyright infringement. Shortly thereafter, Plaintiff LMH carefully scrutinized Defendant Webazilla and discovered the following:

> (1) Defendant Webazilla requested an extension of time to respond to Plaintiff LMH's subpoena requesting Defendant Hotfile.com's information. During that period, Defendant Hotfile.com moved its servers to another hosting company. This action suggested collusion between the parties.

> (2) Defendant Hotfile.com hides its true identify and the identity of its owner(s) and operator(s) using a false Panamanian address. Defendant Webazilla resisted staunchly providing any identifying information to Plaintiff LMH. This irrational resistance heightened the specter of collusion between the parties.

**2.19**   Defendant Webazilla aided, abetted, conspired, and facilitated Defendant Hotfile.com's criminality. These actions create an independent basis for Defendant Webazilla's liability. Defendant Webazilla's facilitation included, but is not limited to:

> (1) Providing web-hosting services for Defendant Hotfile.com;

> (2) Profiting from Defendant Hotfile.com's copyright infringement, of which Defendant Webazilla was actually or constructively aware, or was willfully blind in permitting Defendant Hotfile.com's infringement;

(3) Materially contributed to the illegal and improper conduct;

(4) Was in a position to prevent Defendant Hotfile.com's copyright infringement, but willfully, knowingly, or negligently failed to do so. Defendant Webazilla shared-in and enjoyed the profits from its support and contribution to Defendant Hotfile.com's improper and illegal conduct.

**2.20**    Defendant Hotfile.com directly or indirectly, actually or constructively, intentionally, knowingly, or negligently solicited, encouraged, and was dependent on Defendant Webazilla's participation, confederation, collusion, and support in the infringement of Plaintiff's LMH's copyrighted works as an integral part of its profit structure.

**2.21**    The servers involved in this infringement were located in Defendant Webazilla, L.L.C.'s "server farm." *See,* **Exhibits F and I**.

**2.22**    Defendant Hotfile.com's website provides the blueprint for the massive copyright infringement conspiracy. **Exhibit E** explains Defendant Hotfile.com's Affiliate Program; soliciting, employing, encouraging, and paying others to engage in the massive infringement. Defendant Hotfile.com's website explains the Affiliate Program is not a mere remote hard drive service. Defendant Hotfile.com expects its Affiliates to: (1) recruit users to download infringed materials; and, (2) continue to upload a steady stream newly infringed content. *See,* **Exhibit E.** Defendant Hotfile.com's website bolsters the nature of the illicit enterprise: *"We are trying to encourage the good promoters by increasing their earnings and to reduce the earnings for uploaders* [sic] *that mainly use the free hotfile* [sic] *resources for storage."* *See*, www.Hotfile.com (italics added.)

**2.23**   Defendant Hotfile.com's Affiliates receive compensation depending on their profit production. Platinum Members earn the highest compensation and status level. *See*, **Exhibit E**. Defendant Hotfile.com explains the method by which an Affiliate becomes a Platinum Member:

> **Affiliates: How do I become platinum member / raise my rank?**
>        Essentially to reach a higher status your links should sell more premium accounts. Here are few tips that may help you to obtain a higher rank and eventually reach platinum status:
> •        - Try to post files from hotfile.com only.  Using another file hosting service for the same files allows users to simultaneously download from different sites and they have less incentive to buy premium.
> •        - Switching to different file hosting services every other day hurts your rank - that way people are less willing to buy a premium account, as they will need multiple premium accounts from different services to get all the content and that is more expensive.
> •        - Upload files only if you intent *[sic]* to promote them.  Used server space is also accounted when your rank is considered.
> •        - Put more effort into bringing more visitors to download your files, rather than to upload more files.  If you upload 10Gb of files everyday just to have every file downloaded just few times you are going to be stuck with Copper.
> •        - Post only on reliable resources.  Posting on sites that have popups, *[sic]* try to install troyans *[sic]* or similar stuff hurts your performance and you lose rank.

*See*, www.Hotfile.com.

**2.24**   Defendant Hotfile.com is not a mere "service provider." It is a massive copyright infringer. It engages "Affiliates" who steal copyrighted content and provide this content to Defendant Hotfile.com. Defendant Hotfile.com publishes illicitly obtained copyrighted materials to lure potential members to its website. Defendant Hotfile.com engages in this illicit activity for profit. The Affiliates uploading the illicitly obtained material also profit; Defendant Hotfile.com compensates Affiliates for their nefarious activity.

**2.25**   Defendant Webazilla either directly or indirectly, with either actual or constructive knowledge or through willful blindness engaged in the illicit enterprise. It provided hosting services to Defendant Hotfile.com.



**2.26** The principals, both known and unknown, of all Defendants are equally liable. Intellectual property claims include both the corporate entity and the principals who contributed to the infringement. *See, e.g.,* ***Chanel, Inc. v. Italian Activewear of Florida, Inc.***, 931 F.2d 1472 (11th Cir., 1991); *see, also,* ***Mead Johnson & Co. v. Baby's Formula Service, Inc.***, 402 F.2d 19, 22 (5th Cir., 1968); *and, see,* ***Wilden Pump & Engineering Company v. Pressed & Welded Products Company***, 655 F.2d 984 (9th Cir., 1981).

### SECTION NUMBER III: PLAINTIFF SHOULD BE GRANTED AN EX PARTE TEMPORARY RESTRAINING ORDER

**3.1** The purpose of the penalty provisions of the Copyright Act is patent: to "discourage wrongful infringement as well as to compensate the copyright owner." ***Miller v. Universal City Studios, Inc.***, 650 F.2d 1365, 1376 (5th Cir., 1981) (citing, ***F.W. Woolworth, Company v. Contemporary Arts, Inc.***, 344 U.S. 228, 233, 73 S.Ct. 222, 97 L.Ed.2d 276 (1952). Both purposes will be hopelessly frustrated if the Court fails to issue the order requested. "Copyright infringement must not be allowed to serve as the cornerstone of a profitable business." ***Playboy Enterprises, Inc. v. Webbworld, Inc.***, 991 F. Supp. 543, 561 (N.D. Tex., 1997), *affirmed without opinion*, 168 F.3d 486 (5th Cir., 1999).

**3.2** Plaintiff LMH is entitled to a temporary restraining order and/or preliminary injunction upon establishing that: (1) there is a substantial likelihood that plaintiff will prevail on the merits; (2) plaintiff will suffer irreparable injury unless the injunction is issued; (3) the threatened injury to plaintiff outweighs any damage to the defendant; and, (4) the injunction will not be adverse to the public interest. *See,* ***Plains Cotton Cooperative Association of Lubbock, Texas v. Goodpasture Computer Service, Inc.***, 807 F.2d 1256, 1259 (5th Cir., 1987), *rehearing denied, en banc*, 813 F.2d 407 (5th Cir., 1987), *cert. denied*, 484 U.S. 821, 108 S.Ct. 80, 98 L.Ed.2d 42 (1987).

***Section Number III-A: Plaintiff LMH Has A Substantial Likelihood of Prevailing on the Merits of Its Copyright Claims***

**3.1(A)**        To show a substantial likelihood of prevailing on the merits of a copyright infringement claim, Plaintiff LMH must show that: (1) it owns the copyright to which its infringement claims relate; and, (2) Defendants copied the copyrighted work without authorization. *See*, ***Plains Cotton Cooperative***, *cited supra*, 807 F.2d at 1260; *see, also*, ***Lakedreams v. Taylor***, 932 F.2d 1103 (5th Cir., 1991); *and, see*, ***Educational Testing Services v. Katzman***, 793 F.2d 533, 538 (3d Cir., 1986).

**3.2(A)**        17 U.S.C. **§410(c)** (West, 2009) specifies that the Certificate of Registration constitutes *prima facie* evidence of the validity of the copyright, including ownership. The Certificates of Registration for the productions herein and their exclusive licensing agreements establish that Plaintiff LMH's action is appropriate to vindicate its intellectual property rights. *See*, ***Liberty Media Holdings, L.L.C. v. Hotfile.com***, *Original Petition*, and the attachments thereto.

**3.3(A)**        After establishing ownership, Plaintiff LMH must show unauthorized copying of its works. The evidence of unauthorized copying is clear and indisputable: the infringing works are exact digital copies of the Plaintiff's copyrighted materials. *See*, *Randazza Declaration*, ¶3. Plaintiff LMH did not authorize Defendants to make such copies. *Id.* at ¶4. Plaintiff LMH established a *prima facie* case of copyright infringement. *See*, ***Plains Cotton Cooperative***, *cited supra*, 807 F.2d at 1210; *see, also*, ***Sid & Marty Krofft Television Productions, Inc. v. McDonalds Corporation***, 562 F.2d 1157, 1162 (9th Cir., 1997); *and, see*, ***Whelan Associates, Inc. v. Jaslow Dental Laboratory, Inc.***, 797 F.2d 1222, 1231 (3d Cir., 1986), *cert. denied*, 479 U.S. 1031, 107 S.Ct. 877, 93 L.Ed.2d 984 (1987); *and, see*, ***Educational Testing***, *cited supra*, 793 F.2d at 538. Because of the incontrovertible evidence of Plaintiff LMH's copyright ownership and Defendant Hotfile's unauthorized copying, Plaintiff will prevail in its claims.


***Section Number III-B: Plaintiff Has a Substantial Likelihood of Prevailing on the Merits of Its Trademark Claims***

**3.1(B)**       To prevail on a claim of trademark infringement, a plaintiff must prove that (1) it has a protectable property right in the name it defends; and, (2) that the defendant's use of that name will likely cause confusion. *See*, **Security Center, Ltd. v. First National Security Centers.**, 750 F.2d 1295, 1298 (5th Cir., 1985) (citing, **Bank of Texas v. Commerce Southwest, Inc.**, 741 F.2d 785, 786 (5th Cir., 1984), **15 U.S.C. §1051,** *et seq*.)  In this case, Defendants are distributing movies that bear Plaintiff's federally registered trademark. *See, Randazza Declaration,* at ¶ 5.

**3.2(B)**       Plaintiff LMH's mark is federally registered.  It is presumed valid, the lawful holder being Plaintiff LMH.  *See*, **Talking Rain Beverage Company, Inc. v. South Beach Beverage Company**, 349 F.3d 601 (9th Cir., 2003).  Counterfeiting Plaintiff's mark necessarily establishes a likelihood of confusion.  *See, e.g.*, **Microsoft Corporation v. Software Wholesale Club, Inc.**, 129 F.Supp.2d 995, 1007 (S.D.Tex., 2000); *see, also*, **Microsoft Corporation v. CMOS Technologies, Inc.**, 872 F.Supp. 1329, 1335 (D.N.J., 1994) (noting, "[i]t would be difficult to imagine a clearer case of consumer confusion than the instant case in which the defendants, acting in direct competition with the plaintiff, sold counterfeit products on which plaintiff's registered marks appear in their entirety.  Under these circumstances, the likelihood of consumer confusion, mistake, or deception is clear.")  Defendants sold counterfeit goods bearing the exact replicas of Plaintiff LMH's registered "CORBIN FISHER®" trademark.  There is no doubt that Plaintiff LMH will prevail on the merits of its trademark claims.

***Section Number III-C: Plaintiff Suffers Irreparable Harm***

**3.1(C)**       It is well-settled that on establishing a *prima facie* case of copyright infringement, irreparable injury is presumed and preliminary injunctive relief is appropriate.  *See, **Apple Computer, Inc. v. Formula International, Inc.**, 725 F.2d 521, 525 (9th Cir., 1984); *see, also*, **Wainwright**

*Securities, Inc. v. Wall Street Transcript Corporation*, 558 F.2d 91, 94 (2d Cir., 1977), *cert. denied*, 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed2d 759 (1978); *see, generally,* **3 M. Nimmer & D. Nimmer, NIMMER ON COPYRIGHT, §14.06[A]** (1998).

**3.2(C)**     Irreparable injury is presumed because the "financial impact of copyright infringement is hard to measure and often involves intangible qualities such as customer goodwill." ***Country Kids 'N City Slicks, Inc. v. Sheen***, 77 F.3d 1280, 1288-89 (10th Cir., 1996). When irreparable economic damages are difficult to calculate, a finding of irreparable harm is appropriate. *See,* ***Lakedreams v. Taylor***, 932 F.2d 1103, 1109 (5th Cir., 1991). The language of **17 U.S.C. §502** (West, 2009) combined with copyright infringement's irreparable harm permits the Court to focus solely on the plaintiff's likelihood of prevailing at trial when fashioning preliminary injunctive relief. *See,* ***Albert E. Price, Inc. v. Metzner, et al.***, 574 F. Supp. 281, 286 (E.D.Pa., 1983); *see, also,* ***Educational Testing***, *cited supra,* 793 F.2d at 544; *and, see,* **3 NIMMER ON COPYRIGHT** at **§14.06[A].**

**3.3(C)**     Similarly, in Lanham Act trademark cases, a likelihood of confusion establishes two elements: (1) the irreparable harm necessary to support a preliminary injunction; and, (2) a likelihood of success on the merits when owner establishes the validity of the mark. *See,* ***Calvin Klein Cosmetic Corporation v. Welcome Industrial Corporation***, U.S.P.Q.2d (BNA) 1151, 1153-54 (E.D.N.Y., 1991). The irreparable harm to a plaintiff trademark owner arising from the conduct of an infringer is enormous, immediate, and presumed in law. *See,* ***Augusta National, Inc. v. Executive Golf Management., Inc.***, 996 F.Supp. 492, 496 (D.S.C., 1998); *see, also,* ***Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.***, 43 F.3d 922, 938-939 (4th Cir., 1995) (recognizing, "irreparable injury regularly follows from trademark infringement"); *and, see,* ***Trak, Inc. v. Benner Ski KG***, 475 F.Supp. 1076, 1078 (D.Mass., 1979) (noting, "if defendants are unlawfully infringing plaintiff's trademark, irreparable harm flows from the injury"). "[D]amages caused by trademark infringement and dilution



are by their very nature irreparable and are not susceptible to a remedy at law." ***Porsche Cars North America, Inc. v. Manny's Porshop, Inc.***, 972 F.Supp. 1128, 1132 (N.D.Ill., 1997); ***Brookfield Communications, Inc., v. West Coast Entertainment Corporation***, 174 F.3d 1036, 1066 (9th Cir., 1999) (noting, in cases alleging trademark infringement, irreparable injury generally may be presumed upon a showing of likelihood of consumer confusion.)

**3.4(C)**      Plaintiff LMH demonstrates a substantial likelihood of prevailing on the merits of its copyright and trademark claims. Plaintiff LMH established the element of irreparable harm. *See*, ***Apple Computer, Inc. v. Franklin Computer Corporation***, 714 F.2d 1240, 1254 (3d Cir., 1983), *cert. dism.*, ***Franklin Computer Corporation v. Apple Computer, Inc.***, 464 U.S. 1033, 104 S.Ct. 690, 79 L.Ed.2d 158 (1984); *see, also*, ***Educational Testing***, *cited supra*, 793 F.2d at 543-544. The Court should issue a temporary restraining order.

**3.5(D)**      If the requested relief is not granted, Defendants will have an opportunity to destroy their digital counterfeit copies of Plaintiff LMH's property, and will retain all monies gained through their illegal conduct. Permitting Defendants the ability to gain from their criminality prevents Plaintiff LMH from ending the continued infringement of its registered copyrights and trademarks. Further, it prevents Plaintiff LMH from identifying and prosecuting the ultimate source of the counterfeit goods.

***Section Number III-D: The Balance of Equities Favors the Issuance of the Requested Injunctive Relief***

**3.1(D)**      The temporary restraining order is limited in scope. It does nothing more than prohibit Defendants from destroying, hiding, selling, or otherwise disposing of evidence and moving funds from the Defendant's PayPal account. The Defendant's PayPal account is the only known repository of any of Defendants Hotfile's and Titov's United States. It is essential to freeze this account for Plaintiff LMH to receive any possible relief. Additionally, the preliminary injunction restrains Defendants from making further unauthorized copies of Plaintiff LMH's works and distributing pirated

materials. Injunctive relief seeks nothing more than requiring Defendants comply with the Copyright and Trademark Acts, and preserving the *status quo* of Defendants' unlawful conduct and location of their ill-gotten gains. The imposition on Defendants' legitimate business activities (if any) is minimal and short-lived.

**3.2(D)** The focus of Plaintiff LMH's temporary restraining order is merely maintains the *status quo*. Plaintiff LMH is not asking the Court interrupt Defendants' business. Rather, the temporary restraining order preserves highly transitory evidence of copyright and trademark infringement and stops the flow of Defendants' assets to offshore accounts.

**3.3(D)** Plaintiff LMH continues to suffer irreparable harm. Plaintiff LMH's injury (continued infringement of Plaintiff's copyrights, trademark, and potential destruction of evidence) outweighs any possible damage caused to Defendants.

### Section Number III-E: The Requested Relief is in the Public Interest

**3.1(E)** The public has a genuine interest in upholding copyright protections. *See*, *Apple Computer v. Franklin Computer*, *cited supra*, 714 F.2d at 1255. Defendants' illegal infringements flout the public policy underlying federal copyright law. The copyright laws further the public's interest in protecting business investment, intellectual property, and enforcing federal law. *See*, *Autoskill, Inc. v. National Educational Support Systems, Inc.*, 994 F.2d 1476, 1499 (10th Cir.), *cert. denied*, 510 U.S. 916, 114 S.Ct. 307, 126 L.Ed.2d 254 (1993), *see, also*, 3 NIMMER ON COPYRIGHT, *cited supra*, §14.06[A]. Congress enacted the Lanham Trademark Act to protect consumers against deceptive designations of the origin of goods. *Perfect 10, Inc. v. Cybernet Venutres, Inc.*, 213 F.Supp.2d 1146 (C.D.Cal., 2002). The public interest favors issuance of the requested relief.

**3.2(E)** Case precedent suggests that this Court should find, as a matter of law, that the injunctive relief serves the public interest by preserving the integrity of intellectual property laws.

Intellectual property protections encourage individual effort and creativity by granting valuable, enforceable rights. *See, **Cisco Systems, Inc. v. Huawei Technologies Company, Ltd.**,* 266 F.Supp.2d 551, 554 (E.D.Tex., 2003). Defendants continue to damage irreparably Plaintiff LMH's trademarks and copyrights by their unlawful activity. Issuance of an *ex parte* temporary restraining order will not injure Defendants or any third party accessing Defendants' illegally obtained property. Legitimate sources make Plaintiff LMH's protected works readily available. A restraining order does not harm Defendants; it merely enjoins them temporarily from engaging in unlawful conduct. The Court upholds the public interest by protecting business investment in intellectual property. *See, **Autoskill, Inc.**, cited supra,* 994 F.2d at 1499. Plaintiff LMH is entitled to a temporary restraining order against Defendants.

**3.2(E)** Plaintiff LMH will likely succeed on its copyright and trademark infringement claims. Clear, immediate, and irreparable harm is present. The balance of hardships weighs heavily in favor of protecting Plaintiff LMH's copyrights. The requested temporary restraining order will further the public interest in enforcing federal law and protecting copyrights and trademarks from blatant piracy.

***Section Number III-F: Ex Parte Relief is Essential in this Action.***

**3.1(F)** FED. R. CIV. PROC., **rule 65** permits issuance of a temporary restraining order without prior notice to Defendants. By its very terms, Rule 65 allows for the issuance of an *ex parte* order.

> A temporary restraining order may be granted without written or oral notice to the adverse party or his attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or his attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting his claim that notice should not be required.

FED. R. CIV. PROC., **rule 65(b)** (West, 2009).

An *ex parte* order preserves the *status quo* and prevents irreparable harm. *See*, **Granny Goose Foods, Inc., et al. v. Brotherhood of Teamsters**, 415 U.S. 423, 439, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974). Court grant a temporary restraining order when: (1) immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party can be heard in opposition; and, (2) the applicant sufficiently demonstrates the reason notice should not be required. Numerous courts recognized the need for *ex parte* temporary restraining orders in intellectual property cases. *See*, **Vuitton v. White**, 945 F.2d 569 (3d Cir., 1991); *see, also*, **NBA Properties v. Various John Does**, 113 F.3d 1246 (10th Cir., 1997), *dec'n without published opinion, reported in full at* 1997 U.S.App. LEXIS 11946 (10th Cir., 1997); *and, see*, **American Can Company v. Mansukhani**, 742 F.2d 314, 321 (7th Cir., 1984) (holding, Rule 65 "expressly contemplates the issuance of *ex parte* temporary restraining orders").

**3.2(F)**      The Court of Appeals issued a writ of mandamus ordering the District Court to grant *ex parte* relief:

> The ex parte temporary restraining order is indispensable to the commencement
> of an action when it is the sole method of preserving a state of affairs in which
> the court can provide effective final relief. Immediate action is vital when imminent
> destruction of the disputed property, its removal beyond the confines of the state, or
> its sale to an innocent third party is threatened. In these situations, giving the
> defendant notice of the application for an injunction could result in an inability to
> provide any relief at all. *Id.* at 4, quoting *Developments In The Law – Injunctions*,
> 78 Harv. L. Rev. 994, 1060 (199965); see also *Fimab-Finanziaria Maglificio
> Biellese Fratelli Fila S.P.A. v. Kitchen*, 548 F. Supp. 2487, 249-250
> (S.D. Fla. 1982) (recognizing the need for ex parte restraining orders in infringement
> cases and citing numerous unpublished orders granting such relief).

*In The Matter Of: Vuitton Et Fils S.A.,* 606 F.2d 1 (2d Cir., 1991).

**3.3(F)**      The Second Circuit held: "[t]he *ex parte* temporary restraining order is indispensable to the commencement of an action when it is the sole method of preserving a state of affairs in which the court can provide effective final relief. Immediate action is vital when imminent destruction of the disputed property, its removal beyond the confines of the state, or its sale to an innocent third party is

threatened. In these situations, giving the defendant notice of the application for an injunction could result in an inability to provide any relief at all." *Id.* at 2. The Court further explained:

> [a]ssuming that all of the other requirements of Rule 65 are met, the rule by its very terms allows for the issuance of an *ex parte* temporary restraining order when (1) the failure to issue it would result in "immediate and irreparable injury, loss, or damage" and (2) the applicant sufficiently demonstrates the reason that notice "should not be required." In a trademark infringement case such as this, a substantial likelihood of confusion constitutes, in and of itself, irreparable injury sufficient to satisfy the requirements of Rule 65(b)(1) . . .

*Id.* at 3 (citations omitted.)

**3.4(F)**        To obtain *ex parte* relief, a "Plaintiff need not show that a particular Defendant would not adhere to a temporary restraining order, but rather only that someone like the defendant would be likely to hide or destroy the evidence of his infringing activity." ***Century Home Entertainment, Inc. v. Laser Beat, Inc.***, 859 F.Supp. 636, 638 (E.D.N.Y., 1994) (citing, ***In The Matter Of: Vuitton***, *cited supra*). In this case, the infringement evidence may easily disappear along with the Defendants' ill-gotten gains. *See*, ***Randazza Decl.,*** ¶12. The risk of evidence destruction is especially high. Defendants infringed flagrantly and willfully on Plaintiff LMH's trademark and copyrights; they knowingly distributed and/or sold pirated copies of Plaintiff LMH's works. Defendants already moved more than $1,000,000.00 from their PayPal account to offshore banks. Plaintiff LMH requires this Court's assistance in stopping the flow, and maintaining the *status quo*.

**3.5(F)**        Plaintiff LMH has substantial statutory remedies if it prevails at trial. *See, generally*, **17 U.S.C. §§502-505** (West, 2009), **15 U.S.C. §§1116-18** (West, 2009). Defendants face criminal liability. *See, generally*, **17 U.S.C. §506(a)** (West, 2009), **18 U.S.C. §§2319, 2320, 1341, 1343, 1956** (West, 2009). Remedial action is unavailable if Defendants destroy the evidence of their illegal activities and remove funds beyond the reach of the Court. Prior notice would "render fruitless further prosecution of the action." ***In The Matter Of: Vuitton***, *cited supra*, 606 F.2d at 5.

**3.6(F)** Plaintiff LMH avers that the clear, immediate, and irreparable harm suffered because of Defendants' infringement warrants a temporary restraining order. The risk is palpable that the Defendants' will destroy the infringing files and move any recoverable assets beyond the Court's reach without issuance of an Ex parte order without prior notice.

**3.7(F)** Courts grant Rule 65(b) *ex parte* injunctive relief in two situations: (1) a showing that notice is impossible because plaintiff in unaware of the defendant's identity or location; or, (2) a showing that proceeding *ex parte* is the only method by which the court can fashion effective final relief. *See,* **In The Matter Of: Vuitton,** *cited supra,* 606 F.2d at 4. To justify *ex parte* proceedings under situation (2) above, the movant must show: (1) the adverse party historically disposes of evidence or violates court orders; **_or,_** (2) that persons similar to the adverse party have such a history. *See,* **First Technology Safety Systems, Inc. v. Depinet,** 11 F.3d 641, 651 (6th Cir., 1998), *rehearing denied, en banc,* **Vector Research v. Howard & Howard Attorneys, P.C.,** 1996 U.S.App. LEXIS 7492 (6th Cir., 1996) (emphasis added, bold added).

**3.8(F)** "[T]he giving of notice to the defendants would be likely to result in the disappearance of the counterfeit FILA goods and related records, or the 'dumping' or transfer of the counterfeit goods to unknown third parties, jeopardizing plaintiffs' ability to prevent irreparable injury, to stop the distribution of counterfeit FILA products, and to determine the source and extent of the defendants' dealings in the counterfeit FILA products." **Fimab-Finanziaria Maglificio Biellese Fratelli Fila S.p.A. v. Kitchen,** 548 F.Supp. 248, 249 (S.D.Fla., 1982); *see, also,* **In The Matter Of: Vuitton,** *cited supra,* 606 F.2d at 2-3. Other Courts reached similar conclusions. They recognized that *ex parte* relief is the only effective tool for combating widespread infringement or counterfeiting activity. *See, e.g.,* **Reebok International, Inc. v. Marnatech Enterterprises, Inc.,** 970 F.2d 522 (9th Cir., 1992); *see, also,* **Vuitton v. White,** F.2d 569, 571-72 (3d Cir., 1991). Plaintiff LMH is entitled to issuance of an *ex*

*parte* temporary restraining order. It is the only method of preserving the state of affairs because entities similar to Defendants historically dispose of evidence.

**3.9(F)** The overwhelming majority of evidence demonstrating Defendants' misconduct remains in their sole possession. For example, electronic copies of the bootleg materials, internal and external correspondence, and the ill-gotten profits from this endeavor remain in Defendants' care, custody, and control. The Defendants store a substantial portion of the information and records on electronic data devices. Because of its digital nature, Defendants have the opportunity to destroy this evidence. *See*, ***Randazza Decl.*** at ¶6.

**3.10(F)** Similarly situated defendants base their businesses on violating intellectual property rights of copyright and trademark holders. *See*, ***Randazza Decl.*** at ¶6. Defendants know their criminality and undertake measures to avoid detection and prosecution, whether civilly or criminally. ***Id.*** Defendants, and those similarly situated: (1) know that their actions violate federal and state laws and intentionally avoid court orders; (2) avoid apprehension by destroying, altering, removing, and/or transferring evidence of their wrongdoing; and, (3) are aware that digital evidence is particularly vulnerable to destruction, alteration, and transfer. ***Id.*** Although Plaintiff LMH established a substantial likelihood of success on the merits, Defendants will likely destroy, alter, or transfer such evidence to Plaintiff LMH's detriment unless the Court orders an immediate seizure and impoundment without notice.[1]

**3.11(F)** Plaintiff LMH met the requirements for issuance of a temporary restraining order. Defendants' willful and blatant infringements make it critical that the Court order seizure before Defendants delete, destroy, or transfer the records. Where danger of destruction or hiding evidence

---

[1] In accordance with **FED. R. CIV. P. 65(b)**, LMH submits the declaration of its attorney, Marc Randazza, which certifies the reasons supporting LMH's claim that notice should not be required. **Randazza Decl.** at ¶6.

exists, the federal rules permit issuance of *ex parte* seizure and impoundment orders. *See, **Universal City Studios, Inc. v. Ronnie Lorizzo**, 9:03-CV-5182(SJ) (E.D.N.Y., Nov. 17, 1993); see, also, **The Walt Disney Company, v. Jim Garofalo**, 9:02-CV-5314 (E.D.N.Y., Nov. 12, 1992).

## SECTION NUMBER IV: PLAINTIFF SHOULD BE GRANTED AN
## *EX PARTE* ORDER FOR EXPEDITED DISCOVERY

**4.1** Plaintiff LMH seeks accelerated discovery. Accelerated discovery will determine the full scope of Defendants' infringing activities along with internal documents demonstrating Defendants' willful violation of Plaintiff LMH's rights. Plaintiff LMH seeks expedited discovery through depositions, interrogatories, and document requests from various Defendants. Plaintiff LMH requests that, prior to a show cause hearing, the Court permit this discovery on five (5) business days notice. Expedited discovery has a limited disruptive effect on Defendants' legitimate activities, if any there be. Expedited discovery assists the Court by exposing the extent of Defendants' activities.

**4.2** The Federal Rules of Civil Procedure permit expedited discovery when a party moves for a preliminary injunction or there exists imminent danger of irreparable harm to the movant. *See*, **FED. R. CIV. PROC., rule 30(a),(b)(3)** (West, 2009) (permitting accelerated depositions on showing of good cause); **FED. R. CIV. PROC., rule 33(a)** (West, 2009); **FED. R. CIV. PROC., 34(b)** (West, 2009) (permitting accelerated discovery for interrogatories and document requests); *see, also*, **4A MOORE'S FEDERAL PRACTICE, §30.54[2],** 30-72 (1994) (discussing standard for leave from 30-day period required under prior statute: "Leave should be granted when circumstances dictate that prejudice [will] result from postponing the taking of the deposition until after the thirty days has run."); *and, see*, **Sega Enterprises, Ltd. v. Accolade, Inc.**, 977 F.2d 1510, 1516 (9th Cir., 1992). This case warrants expedited discovery.

### SECTION NUMBER V: PLAINTIFF WILL PROVIDE ADEQUATE SECURITY

**5.1**    Plaintiff LMH will provide adequate security for the requested relief by appropriate bond deposited with the Court. Because Plaintiff LMH seeks to maintain the *status quo* and all funds will remain frozen in the Defendants' account there is no reasonable cause for alarm. Plaintiff LMH submits that a $1,000.00 cash or surety bond is adequate. *See*, FED. R. CIV. PROC., **rule 65** (West, 2009).

### SECTION NUMBER VI: DEFENDANT SHOULD BE ORDERED TO SHOW CAUSE REGARDING THE ISSUANCE OF A PRELIMINARY INJUNCTION

**6.1**    The 5th Circuit standard for issuance of preliminary injunction is concomitant with the standard for issuance of a temporary restraining order. *See, Speaks v. Kruse*, 445 F.3d 396, 399-400 (5th Cir., 2006). Plaintiff LMH overcomes its burden to meet these standards. This Court should issue a show cause order requiring Defendants demonstrate any countervailing argument the Court should not issue a preliminary injunction continuing the relief granted in the temporary restraining order.

### SECTION NUMBER VII: CONCLUSION

**7.1**    Defendants illegally distributed copies of Plaintiff LMH's copyrighted materials for profit. Defendants' conduct is patently indefensible. It immediately and irreparably harms Plaintiff LMH. The Court should grant Plaintiff LMH's motions for a temporary restraining order, order for seizure, order for expedited discovery, and order to show cause. The Court should grant these requests *ex parte* and without advance notice to Defendants to preserve the *status quo* and permit the Court to fashion effective relief at trial.

**7.2**     Plaintiff LMH respectfully requests the Court grant the *ex parte* Motion for a Temporary Restraining Order, Order for Seizure by Audit, Order for Expedited Discovery, and Order to Show Cause.

Respectfully submitted,

**LEAD COUNSEL:**
Marc J. Randazza, Esq.
302 Washington Street, Suite 321
San Diego, CA 92103
Telephone:619-866-5975
Facsimile: 619-866-5976
Electronic Mail: marc@corbinfisher.com
Massachusetts Bar Card No.: 651477
Florida Bar Card No.: 625566
Admitted to practice before the
United States District Court
Northern District of Texas

**LOCAL COUNSEL:**
Gary P. Krupkin, Esq.
1116 Commerce Drive
Richardson, Texas 75081
Telephone: 972-261-8284
Facsimile: 972-671-3671
Electronic Mail: krupkinlaw@gmail.com
Texas Bar Card No.: 00790010
Admitted to practice before the
United States District Court
Northern District of Texas

MEMORANDUM IN SUPPORT OF EX PARTE APPLICATION FOR TRO, ORDER FOR SEIZURE
EXPEDITED DISCOVERY, AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION